BENJAMIN B. WAGNER
United States Attorney
MATTHEW D. SEGAL
Assistant U.S. Attorney
501 I Street, Suite 10-100
Sacramento, California 95814
Telephone: (916) 554-2708

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,  )<br>                              )<br>           Plaintiff,        )<br>                              )<br>     v.                       )<br>                              )<br>DONALD TAYLOR,                )<br>                              )<br>           Defendant.         )<br>_____) | CASE NO. 2:09-CR-325 FCD<br><br>UNITED STATES' SENTENCING<br>MEMORANDUM<br><br>DATE: Nov. 15, 2008<br>TIME: 10:00 a.m.<br>COURT: Hon. Frank C. Damrell |

## I.   INTRODUCTION

The United States recommends that the Court sentence the Defendant to sixty months imprisonment. The Presentence Report ("PSR") is correct in its factual findings. The PSR's Guidelines calculations are entirely supported by the facts and the law. Further, given the Defendant's persistent habit of using violence against women and his gang membership, he should be imprisoned to protect society. Only a sixty-month sentence is sufficient to comply with the purposes of sentencing. 18 U.S.C. § 3553(a).

## II.   THE PSR CALCULATES THE CORRECT LOSS FOR THE ROLE THAT TAYLOR PLAYED IN THE BARKSDALE CONSPIRACY.

Taylor views himself as a "middleman." (PSR ¶ 38.) He traveled around the country, explained to various people how the

1

scheme worked, connected them to Barksdale and Jackson, and was compensated for his efforts.  Because of Taylor's recruitment and training work, Barksdale and Jackson were able to run the debit card approval code fraud in Arizona, Indiana, Montana, and Texas.  (PSR ¶ 16-23, 26, 28, 37-44.)  Taylor was the essential link from the organizers to a number of new recruits.  Taylor provided the explanation of the scheme, the telephone number, and the instructions on how to remit money to the Barksdale and Jackson.  (PSR ¶ 48.)  His confession established that he absolutely knew the scope of the conspiracy and he never withdrew.  (Id.)  He just moved on and recruited more runners.

   Taylor pleaded guilty to conspiring with the organizers of the conspiracy.  (Indictment ¶ 2; Plea Agr., Att. A.)  He agreed in his factual basis that he was a "middle man" in a single, multi-state conspiracy that lasted from July 2006 to February 2008.  (Id.)  He admitted that his role was to recruit runners for the conspiracy and he was paid with a small share of the take from various transactions.  (Id.)

   In his Sentencing Memorandum, the Defendant tries to re-conceptualize the single, overarching conspiracy into discrete episodes that he claims lasted only for the first few transactions in which he was directly involved.  This argument ignores his plea and the fact that he never withdrew from his role as recruiter for the organizers.  The relevant "jointly undertaken criminal activity" is Taylor's ongoing agreement with the organizers to provide ground-level workers around the country.  The PSR fairly attributes as "reasonably foreseeable" to Taylor those losses caused by the people he brought into the

2

conspiracy for Barksdale and Jackson.  (PSR ¶ 47.)  That analysis is sound and plainly supported by a preponderance of the evidence as required by Ninth Circuit law.  See <u>United States v. Treadwell</u>, 593 F.3d 990, 1002 (9th Cir. 2010) (jointly conducted criminal activity in a fraud case).  Taylor can correctly state that he did not recruit every runner, but the PSR only attributes to him the losses that Barksdale and Jackson caused through those front-line co-schemers that Taylor brought in.

**III. MANAGER / SUPERVISOR**

Like Barksdale himself, Taylor never assumed the risk of entering a bank to conduct the approval code fraud.  (Def. Mem. at 3.)  Taylor instead recruited front-line personnel, educated them in the scheme, and demanded and received a cut for himself.  (PSR ¶ 62.)  He also helped co-conspirators when law enforcement intervened.  When Kevin Dixon got arrested, Taylor, who at the time was with Eric Mayo in Texas, instructed a woman to destroy cell phones and recover Dixon's car.  (PSR ¶ 18, 24-26.)  When that woman became an FBI confidential source, Taylor brought her into the scheme, told her how to pay Barksdale, and was heated and emphatic in his commands for her to pay Taylor his own share.

The PSR thus appropriately gives an adjustment for Taylor's managerial role.  Knowledge, recruitment of accomplices, instructing front-line schemers to part with money, and taking profit without labor or risk are all hallmarks of management.  See U.S.S.G. § 3B1.1, application note 4.

**IV.   CONSIDERATIONS UNDER 18 U.S.C. § 3553(a)**

The Court must begin its sentencing analysis with a correct Guidelines calculation as the "starting point and initial

benchmark." <u>Kimbrough v. United States</u>, 128 S. Ct. 558, 574 (2007); <u>Gall v. United States</u>, 128 S. Ct. 586, 596-597 n.6 (2007); <u>United States v. Carty</u>, 520 F.3d 984, 991 (9th Cir. Mar. 24, 2008) (en banc).  But the Court must also consider the Defendant as a man with his own individualized history and characteristics.  That analysis does not favor a reduced sentence.

The scheme in this case was perpetrated mainly by men who procured women to do the front-line work of entering banks and risking arrest.  Some of the men were pimps who had violent criminal histories.  Their runners who were prostitutes and/or "girlfriends."  (PSR ¶ 16 (Dixon); PSR ¶ 24 (Mayo).)  And Barksdale was not the only street gang member involved.

It is no accident that these men ended up as co-conspirators with Taylor.  Taylor himself is a gang member, albeit, he claims, "inactive."  (PSR ¶ 116.)  His own criminal history includes four separate arrests for violence against women.  (PSR ¶¶ 74, 76, 90, 97.)  Taylor's latest arrest occurred after he beat the mother of one of his children while he was on pretrial release in this very case.  (PSR ¶ 97.)  That case is pending and is not part of his criminal history.  There should be no sentencing variance in his favor.

**V.   CONCLUSION**

The PSR fairly attributes to the Defendant those losses from the scheme that were foreseeably caused by the recruiting and training that he did.  Taylor never stopped working as Barksdale's co-conspirator and he knew exactly the consequences of his work.  Further, because of his own criminal habits beyond

fraud, Taylor is no person for whom the Court should temper justice with mercy. The United States requests a sentence at the statutory maximum.

                                              Respectfully Submitted,

                                              BENJAMIN B. WAGNER
                                              United States Attorney

DATE: November 9, 2010       By:   /s/ Matt Segal
                                              MATTHEW D. SEGAL
                                              Assistant U.S. Attorney