1  DANIEL J. BRODERICK, #89424
   Federal Defender
2  TIMOTHY ZINDEL, Bar #158377
   Assistant Federal Defender
3  801 I Street, 3rd Floor
   Sacramento, California 95814
4  Telephone: (916) 498-5700

5

6  Attorney for Defendant
   DONALD TAYLOR

7

8

9            IN THE UNITED STATES DISTRICT COURT

10          FOR THE EASTERN DISTRICT OF CALIFORNIA

11

12

13 UNITED STATES OF AMERICA,     )  No. 2:09-CR-0325 FCD
                                 )
14              Plaintiff,       )
                                 )  **FURTHER MEMORANDUM REGARDING**
15       v.                      )  **OBJECTIONS TO PRESENTENCE REPORT**
                                 )
16 DONALD TAYLOR,                )
                                 )  Date:  November 29, 2010
17              Defendant.       )  Time:  10:00 a.m.
                                 )  Judge: Hon. Frank C. Damrell
18 _____)

19

20 **I.   The Government Failed to Meet its Burdens of Proof with Evidence.**

21        Mr. Taylor timely objected to two guidelines adjustments recommended

22 in the PSR and sought by the United States:  (1) to a three level role

23 adjustment under guidelines section 3B1.1 and (2) to four additional

24 levels attributed to loss under guidelines section 2B1.1(b)

25 (specifically, the government sought a 14-level increase based on an

26 intended loss of $485,000 while Mr. Taylor maintains he is responsible

27 only for $193,000 in intended losses - a 10-level increase).  He also

28 asked to reduce the recommended amount of restitution to $124,510 in

1  order to eliminate $77,500 in restitution for offenses committed by Eric
2  Mayo and Jolene Papineau, with whom he did not criminally associate.

3      In opposing Mr. Taylor's objections, the government offered no
4  evidence to prove either of the adjustments or the amount of restitution,
5  although the law plainly required it to do so.  "'[T]he government bears
6  the burden of proving . . . the facts necessary to enhance a defendant's
7  offense level under the Guidelines.'"  *United States v. Showalter*, 569
8  F.3d 1150, 1159 (9th Cir. 2009), quoting *United States v. Burnett*, 16 F.3d
9  358, 361 (9th Cir. 1994).  When a defendant objects to factual allegations
10 made in a PSR, "'[t]he court may not simply rely on the factual
11 statements in the PSR,'" as the government urged the Court to do.
12 *Showalter*, 569 F.3d at 1160, quoting *United States v. Ameline*, 409 F.3d
13 1073, 1085-86 (9th Cir. 2005).  Under Federal Rule of Criminal Procedure
14 32(i)(3)(A), the Court "may accept . . . as a finding of fact" only an
15 "*undisputed* portion of the presentence report."  *Showalter*, 569 F.3d at
16 1159 (emphasis added).  "[W]hen a defendant raises objections to the PSR,
17 the district court is obligated to resolve the factual dispute, and the
18 government bears the burden of proof . . . ."  *Id.* at 1160.

19     Rather than submit evidence to meet its burden, the government
20 submitted a memorandum making factual assertions that were not supported
21 by evidence and, in some instances, not supported by the PSR.  As in
22 *Showalter*, the Court was therefore obligated to sustain Mr. Taylor's
23 objections in light of the failure of proof.

24     After Showalter objected to this statement [*i.e.*, that there
       were 50 or more victims], the district court was obliged to do
25     more than simply adopt it.  *Ameline*, 409 F.3d at 1086.  Rather,
       Showalter's timely objection to the PSR required the government
26     to produce at least *some* evidence to support its contention .
       . . .  The district court did not require the government to
27     meet this burden.

28 *Showalter*, 569 F.3d at 1160.

1    In *United States v. Jordan*, 291 F.3d 1091, 1099 (9th Cir. 2002), the
2 Court of Appeals held that this Court erred in finding a man to be a
3 leader based on PSR allegations the government failed to support with
4 evidence.   The Court of Appeals noted that "factual contentions of
5 leadership role, such as those contained in the PSR, are not supported by
6 evidence in the pretrial, trial, or sentencing records," and cautioned
7 that "speculative logic cannot displace the need for evidence on such an
8 issue, which cannot be decided by assumption or inference not based on
9 fact."  *Id.* at 1098-99.

10 **II.  Mr. Taylor Was Not a Manager or Supervisor.**

11    The government offered no evidence to support the PSR's assertion
12 that Mr. Taylor "managed and supervised at least 11 front-line 'runners'"
13 as alleged in paragraph 62 of the PSR.  The government having failed to
14 meet its burden, the Court should have sustained Mr. Taylor's objection
15 to the role adjustment.  *See Jordan*, 291 F.3d at 1099.

16    Rather than support the assertion with evidence, the government
17 merely cited the same PSR paragraph Mr. Taylor disputes.  *See* U.S. Sent.
18 Mem. at 3:14.  The government then argued that "knowledge, recruitment of
19 accomplices, instructing front-line schemers to part with money, and
20 taking profit without labor or risk are all hallmarks of management,"
21 citing application note 4 to Guidelines section 3B1.1.  *Id.* at 3:22-24.
22 However, application note 4 to Guidelines section 3B1.1 bears little
23 resemblance to the government's paraphrase of it.

24    Mr. Taylor quoted note 4 in full in his objections because it
25 comprises the test the Court must use to determine whether he is a
26 manager or supervisor:

27    Factors the court should consider include the exercise of
   decision making authority, the nature of the participation in
28    the commission of the offense, the recruitment of accomplices,
   the claimed right to a larger share of the fruits of the crime,

1       the degree of participation in planning or organizing the
2  offense, the nature and scope of the illegal activity, and the
     degree of control and authority exercised over others.

3  App. n. 4 to U.S.S.G. § 3B1.1.  Using this test makes it clear that Mr.

4  Taylor was not a manager or supervisor in the Barksdale/Jackson scheme.

5       **What was the nature of Mr. Taylor's participation in the offense?**

6  According to the government, who wrote the factual basis to Mr. Taylor's

7  plea agreement, "Mr. Taylor was a 'middle man' in the conspiracy" who

8  "recruited runners for Barksdale, Jackson, and other higher-ups" in

9  "return" for "a small share of the take from various transactions in

10  which he recruited runners."  Plea Agreement at 11:7-9.  According to the

11  same document, the only "runners" Mr. Taylor "recruited" were the CS

12  Jersey, who did one transaction at the behest of the FBI; her friend

13  Kevin Dixon, from whom she first learned of the scheme; and "runners in

14  the Indianapolis, Indiana area," where (as Mr. Taylor concedes) he dealt

15  with a man named Rodney Abernathy, who used others to execute the scheme.

16  The concession hardly supports the PSR's assertion that Mr. Taylor

17  "managed and supervised" one person, let alone "11 front-line 'runners'

18  . . . ."  Were the Court to accept the PSR's assertion, it would commit

19  the same error for which the district court was reversed in *Showalter*.[1]

20       At sentencing on November 15, defense counsel cited *United States v.*

21  *Lopez-Sandoval*, 146 F.3d 712 (9th Cir. 1998).  In *Lopez-Sandoval*, the

22  Court of Appeals made clear that "'[w]ithout a showing that the defendant

23  had *control over others*, even a defendant with an important role in an

24  offense cannot be deemed a manager." *Id.* at 717 (emphasis added).  The

25         [1]  "Essentially, it appears that the probation office said there
26  were 117 victims because the bankruptcy trustee said so, without any
explanation as to how the trustee came up with this number.  This does
27  not justify a conclusion that the government met its burden of
establishing that there were '50 or more victims.'  Accordingly, . . .
28  there was insufficient evidence to support a 4-level enhancement for
'50 or more victims.'"  *Showalter*, 569 F.3d at 1161.

district court deemed Lopez-Sandoval an "organizer or leader" because "the deals wouldn't have gone down" without his participation. *Id.* at 716. Citing *United States v. Harper*, 33 F.3d 1143, 1151 (9th Cir. 1994), the Court of Appeals explained that a "but for" test is "inappropriate": "the district court instead must determine whether the defendant 'exercised some control over others involved in the commission of the offense [or was] responsible for organizing others for the purpose of carrying out the crime." *Lopez-Sandoval*, 146 F.3d at 717; *also see United States v. Alred*, 144 F.3d 1405, 1422 (11th Cir. 1998)("We have held that a defendant's status as a middleman or distributor is insufficient for a section 3B1.1 enhancement, which requires authority in the organization that perpetrates the criminal conduct, the exertion of control, or leadership").

No evidence before the Court shows that Mr. Taylor had "control" over Kevin Dixon, the CS, or any other person. He was therefore not a manager or supervisor within the meaning of the guidelines.

The remaining considerations listed in the Application Note make clear that he played no leadership role.

Did Mr. Taylor **exercise decision making authority**? Answer: *No*. The only persons having decision-making authority in this scheme were its managers or supervisors, Mr. Barksdale and Ms. Jackson.

Did Mr. Taylor **recruit accomplices?** The answer is **Yes**, in the sense that he provided key information about the scheme to persons who wished to execute the scheme for their own benefit, but also **No**, in the sense that the persons he recruited all knew about the scheme from the streets, where it was known to be an easy way to make quick money. The PSR does not claim that Mr. Barksdale or Ms. Jackson employed Mr. Taylor to find new schemers. There was no need for them to do so.

1  Did Mr. Taylor **claim a right to a larger share of the proceeds?**
2  Answer: **No.** According to the factual basis to the plea agreement, "he
3  would typically receive 5% to 10% from transactions," meaning he got the
4  *smallest* share of the proceeds, with half going to Mr. Barksdale and Ms.
5  Jackson and the remaining 40 to 45 per cent to the thief himself.

6  Did Mr. Taylor **participate in planning or organizing the offense?**
7  Answer: **No.** The scheme was concocted before Mr. Taylor participated and
8  he did not plot its details or participate in the thefts that profited
9  Mr. Barksdale, Ms. Jackson, and the thieves who entered the banks.

10  What **degree of control and authority** did Mr. Taylor **exercise over**
11  **others?** Answer: **None.** Each co-schemer made his or her own decision
12  about when and where to steal money and about how much money to steal.
13  They did not act at Mr. Taylor's direction on any occasion and all co-
14  schemers quickly moved on to deal directly with Mr. Barksdale, committing
15  thefts in which Mr. Taylor played no part. As to Mr. Dixon and others,
16  Mr. Taylor did little more than provide a link to Mr. Barksdale. This is
17  why, for example, Mr. Taylor cannot be held responsible for all the
18  losses caused by Kevin Dixon and Ms. Isaacs. In mid-September 2007, Mr.
19  Dixon and Ms. Isaacs began executing the scheme outside of Montana
20  without Mr. Taylor's assistance or involvement. While it is true that
21  Mr. Taylor later explained the scheme in detail to Jersey, the CS, he did
22  so because she asked him to - and she asked him to do so because she was
23  talking into a tape recorder provided by the FBI and was therefore
24  feigning ignorance.

25  Mr. Taylor was not a manager, supervisor, or leader of any kind. No
26  evidence supports the PSR's recommendation of an aggravating role
27  adjustment.
28  /////

1  III.   **The Intended Loss Is Not Greater than $193,000.**

2      Mr. Taylor concedes that his offense level should be increased under

3  guidelines section 2B1.1(b)(1) because he both jointly undertook and

4  reasonable foresaw actual and attempted losses of $193,000 in Montana and

5  Indiana.  A loss of this amount requires that 10 levels be added to the

6  base offense level under U.S.S.G. § 2B1.1(b)(1)(F).  However, Mr. Taylor

7  objected to paragraphs 49, 50, and 60 of the PSR, which assert he is

8  responsible for $485,000 in intended losses.  The larger amount includes

9  losses caused by persons with whom Mr. Taylor did not criminally conspire

10 (those named in paragraph 50, for example, and also Eric Mayo, who

11 probably learned about the scheme from Kevin Dixon and who dealt directly

12 with Mr. Barksdale) as well as losses he did not know about, from thefts

13 in which he did not participate.

14     Once again, the government has the burden to prove that Mr. Taylor

15 reasonably foresaw *and* jointly undertook to cause losses greater than

16 $193,000, within the meaning of guidelines section 1B1.3.  Once again,

17 the government offered no evidence to meet its burden, relying instead on

18 mere argument.[2]  Instead of proving its factual claim, as the law requires

19 it to do, it urged the Court to adopt the PSR without putting the

20 government to its burden.  This, the Court may not do.

21     Accordingly, the Court should have sustained Mr. Taylor's objection

22 to the loss calculations set forth in the PSR.

23 IV.  **The Government Failed to Prove the Recommended Restitution.**

24     The government offered no evidence to prove that Mr. Taylor was

25 responsible for the $77,500 in losses attributed to Eric Mayo and Jolene

26

27     [2]    "The PSR fairly attributes as 'reasonably foreseeable' to
Taylor those losses caused by the people he brought into the conspiracy
28 . . . .  That analysis is sound and plainly supported by a
preponderance of the evidence . . . ."  U.S. Sent. Mem. at 2:27-3:3.

1  Papineau.   Accordingly,  the  Court  must  subtract  this  amount  from  the

2  total recommended restitution.

3  **V.     Conclusion.**

4      For the reasons stated above and in Mr. Taylor's objections filed

5  November 1, 2010, the correct offense level is 15 rather than 22.   The

6  guideline  range  is  37  to  46  months.   Restitution  should  be  set  at

7  $124,510, as recommended in paragraph 52 of the PSR.  Mr. Taylor asks the

8  Court to sentence him to three years in prison.  Having pled guilty 15

9  months ago, he objects to any further continuance of the sentencing date.

10

11                                        DANIEL J. BRODERICK
                                          Federal Defender
12

13  Dated:  November 19, 2010             /s/ T. Zindel
                                          TIMOTHY ZINDEL
14                                        Assistant Federal Defender
                                          Attorney for DONALD TAYLOR
15

16

17

18

19

20

21

22

23

24

25

26

27

28