BENJAMIN B. WAGNER
United States Attorney
MATTHEW D. SEGAL
Assistant U.S. Attorney
501 I Street, Suite 10-100
Sacramento, California 95814
Telephone: (916) 554-2708

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> DONALD TAYLOR, ) <br> ) <br> Defendant. ) <br> _____) | CASE NO. 2:09-CR-325 FCD <br><br> UNITED STATES' SUPPLEMENTAL SENTENCING MEMORANDUM <br><br> DATE: Nov. 29, 2008 <br> TIME: 10:00 a.m. <br> COURT: Hon. Frank C. Damrell |

## I. INTRODUCTION

The Defendant's invocation of the burden of proof is irrelevant to how the Court should apply the law to the admitted facts. Facts supporting the role and loss adjustments are supported by the Defendant's admissions in the Plea Agreement and those specific PSR paragraphs that the Defendant does not contest. If the Court finds it necessary to consider evidence, it may refer to the Defendant's confession, (C.R. 53), which shows that the Defendant had extensive participation in, and knowledge of, the scheme. The Court may consider this document over any defense objection that it is hearsay and not subject to cross-examination. See United States v. Littlesun, 444 F.3d 1196, 1200 (9th Cir. 2006).

1

**II. THE DEFENDANT WAS A MANAGER/SUPERVISOR BECAUSE HE RECRUITED PARTICIPANTS, TRAINED THEM, AND TOOK A RISK-FREE SHARE OF THEIR FRAUD PROCEEDS.**

On the admitted facts, there is no question that the Defendant properly should receive a three-point adjustment for being a manager/supervisor.

Many of the Defendant's arguments seem directed to whether he should receive a four-point adjustment for being an organizer/leader. (Def. Furth. Mem. at 5.) The Defendant cites the criteria of U.S.S.G. § 3B1.1, application note 4, but that note discusses how to distinguish an organizer/leader from a manager/supervisor. Id. Here, the PSR concludes that the Defendant only managed and supervised others.

In his plea, the Defendant admitted, "He recruited runners for Barksdale, Jackson, and other higher-ups in the conspiracy. In return, Taylor would get a small share of the take from various transactions for which he had recruited runners." (Plea Agr. Att. A.) The Defendant helped <u>manage</u> the scheme by providing new recruits with knowledge of how it worked, what number to call, and where to send money. The Defendant seems to think that it is important that others had already heard of the scheme. That is irrelevant, even for a defendant receiving the four-point organizer/leader adjustment. <u>See</u> <u>United States v. Ingham</u>, 486 F.3d 1068, 1076 (9th Cir. 2007).

The Defendant served as a recruiter and coordinator in return for a risk-free "small share" equal to tens of thousands of dollars. That is a management role. Specifically, and admittedly, the Defendant brought into the scheme his cousin Kevin "Cheeze" Dixon, a pimp who used co-defendant Patience

2

Issacs as a runner in Montana and other places.  (Id.; Def. Sent. Mem. at 4.; FD-302 at 4-5.).  Apparently through Dixon, the Defendant at a strip club later met yet another pimp, Eric "Fast" Mayo, introduced Mayo to the scheme, and provided Mayo with Barksdale's bank account number for the transmission of proceeds.  (Taylor FD-302 at 4.)[1]  Mayo used co-defendant Jolene Papineau as a runner in the Southwest.  (PSR ¶ 45.)  The Taylor-Mayo relationship continued, because Mayo later helped Taylor direct a runner quickly to send fraud proceeds to Taylor and Barksdale.  (PSR ¶ 24.)[2]  The Defendant admits that he brought in Abernathy in Indianapolis.  (Def. Further Mem. at 4.)

Under Ninth Circuit law, recruitment, training, and provision of essential details like the bank account and phone numbers are enough to qualify for an aggravating role adjustment.  In United States v. Montano, 250 F.3d 709, 715-716 (9th Cir. 2001), the Ninth Circuit found no clear error in an aggravating role adjustment for a person who hired two others to smuggle pharmaceuticals from Mexico.  This was because the Defendant "told the [smugglers] when to make a crossing, what pharmaceuticals to purchase, and where to deliver them."  Id.

---

[1] In unsworn averments of counsel, the Defendant contends that Mayo was brought into the scheme by Dixon.  (Def. Sent. Mem. at 5.)  This contradicts the Defendant's confession.  (FD-302 at 4.)  The Defendant does not contest the PSR's description of how he used Mayo to pass on messages about when and to whom to send money.  (PSR ¶ 24.)

[2] The Defendant does not contest this paragraph in the PSR, which casts doubt on his counsel's averment that he did not conspire with Mayo.  (Def. Furth. Mem. at 7.)  The call was recorded because the "runner" was an informant.

3

Here, Taylor admits that he recruited people, told them what number to call, and instructed them on where and when to deposit money to pay his and Barksdale's respective shares. Those are management functions.

The Ninth Circuit has found the aggravating role adjustment applicable to a claimed "middleman" who recruited participants and organized essential operational details.

> The fact that [a drug middleman] and his suppliers were not in a permanent hierarchical relationship does not preclude our conclusion. Section 3B1.1 allows enhancements for "organizers" as well as for "supervisors," "leaders," or "managers." An enhancement may be proper where, as here, a defendant organizes others in the commission of the criminal activity even though he does not retain a supervisory role over the other participants. The enhancement reflects the greater level of culpability of the participant who arranges the transaction.

United States v. Varela, 993 F.2d 686, 691-92 (9th Cir. 1993).

The narcotics case cited by the Defendant does not help him. In United States v. Lopez-Sandoval, 146 F.3d 712, 717 (9th Cir. 1998), the Ninth Circuit held that a role adjustment was inappropriate when the facts showed only that the defendant had served as a Spanish-English translator. Id. Lopez-Sandoval left intact the Ninth Circuit's teaching that a defendant who organizes details between other criminals is subject to an aggravating role adjustment. Id. at 717-718, citing Varela, 993 F.2d at 691-692.

Donald Taylor did a lot more managing and supervising than the translator did in Lopez-Sandoval or the runners did in this case. The Defendant has not contested the Plea Agreement specific PSR paragraphs that discuss his recruiting participants, instructing them on whom to call and where to send money, and

4

claiming a share of their loot.  Also, in his confession, Taylor admitted that he drove runners to banks.  (FD-302 at 2.)  The Defendant may not be an "organizer/leader," but he plainly qualifies for an aggravating role adjustment as a "manager/supervisor."

### III. THE DEFENDANT IS ACCOUNTABLE FOR ALL OF THE LOSS CAUSED BY ALL OF THE PEOPLE HE RECRUITED.

No evidence is necessary on loss because Defendant does not dispute the amount of loss caused by others he recruited.  The Defendant's claim is a legal one, that is, that only his recruits' initial transactions were ones in which he "jointly participated."  On this point, the United States has nothing to add to its initial filing, because the Defendant cannot walk away from the admissions in his Plea Agreement.  The Defendant admitted that he conspired with the leaders to recruit runners.  That was his role and he was paid for it.  All of the losses the leaders caused through runners Taylor recruited are foreseeable and fairly attributable to Taylor.

Taylor's confession supports the PSR's conclusion that Taylor is responsible for the losses that Barksdale caused through Mayo and Papineau in the Southwest.  The FD-302 of the confession was not filed because counsel told the undersigned that Taylor felt threatened.  In his confession, Taylor identified Mayo's photograph as "Fast."  (FD-302 at 4.)  Taylor admitted that he introduced Mayo to the scheme and provided Mayo with Barksdale's bank account number.  (Id.)  Mayo subsequently sent money to Barksdale as organized by Taylor.  (Id.)  Mayo also helped Taylor direct Taylor's own runner (the CI) regarding where

5

and when to send money to Taylor and Barksdale.  (PSR ¶ 24.)
Evidence supports the PSR's finding that Taylor recruited Mayo
for Barksdale.  Taylor cannot excuse himself from the resulting
fraud transactions Barksdale executed through Mayo.

**IV.   CONCLUSION ON SENTENCE AND APPEAL WAIVER**

The PSR is correct in its facts and the conclusions that it draws from them.  The Court should also consider the Defendant himself.  Donald Taylor has grown older, but not wiser.  He has continued to lead a life of crime.  His recent conduct indicates that he is a danger to society generally and women in particular. He should be sentenced to sixty months.

One more subject bears mention: the Defendant's appeal waiver.  On November 15, 2010, the Court addressed defense counsel concerning arguments that counsel might contemplate raising in the Ninth Circuit.  Importantly, the Court did not tell the Defendant that he had the right to appeal.  To resolve any ambiguity, the Defendant must be advised on his appeal waiver.  (Plea Agr. VII(B).)  This is because under Ninth Circuit law, if the Court erroneously advises the Defendant on the right to appeal, that advisement can render a Plea Agreement's appeal waiver unenforceable.  See <u>United States v. Buchanan</u>, 59 F.3d 914, 918 (9th Cir. 1995); see also <u>United States v. Felix</u>, 561 F.3d 1036, 1040-1041 (9th Cir. 2009).

                        Respectfully Submitted,

                        BENJAMIN B. WAGNER
                        United States Attorney

DATE: November 24, 2010      By:   /s/ Matt Segal
                                    MATTHEW D. SEGAL
                                    Assistant U.S. Attorney